McKinney, J.,
delivered tbe opinion of tbe Court.
This bill was brought to enjoin an action of covenant instituted in tbe Circuit Court of Payette on tbe 29th of March, 1849, in tbe name of tbe State of North Carolina, *484 for the use of defendant, Joseph L. Blackwood, against Smith, the complainant, as surety to a guardian bond.
It appears that on the 26th of October, 1836, one William Boyles was appointed guardian for Joseph L. Blackwood, an infant, by the County Court of Mecklen-burg, North Carolina; and he executed a bond in the penalty of $3000, with Smith, the complainant, (who then was a resident of the latter State,) and two other persons, who were not sued in said action, as sureties.
Boyles was afterwards removed from his guardianship by the County Court, for abuse of his trust. At the time of his removal, he was in arrear to his ward some $800 perhaps, for money of his ward’s which had been previously received by him, and not accounted for in any way.
After the removal of Boyles, one Orr was appointed to succeed him as guardian of Blackwood. Soon after his appointment, Orr died; and thereupon the defendant Alexander succeeded to the guardianship of Blackwood, by appointment of the County Court, and likewise became the personal representative of the estate of Orr, the preceding guardian.
In April, 1848, Blackwood caused two suits to be instituted in the Superior Court of Mecklenburg, North Carolina— the one against said Alexander as executor of Orr, on the guardian bond of the latter, and the other against Alexander on his own guardian bond. The ground of action in each case was the same — the neglect of the respective guardians to take steps to collect from Boyles, the first guardian; the amount of money due to Blackwood, received by Boyles and not accounted for.
Blackwood recovered judgment in each case; and, on *485 appeal, the judgments were affirmed by the Supreme Court of North Carolina, at the August Term, 1854. Blackwood died, pending said suits, and they were revived in the names of his personal representatives, in whose favor the final judgments were rendered.
It is shown that, after the recovery of said judgments, the defendant Alexander made an adjustment with the personal representatives of Blackwood, by which, without an extinguishment of said judgments, they were transferred to a trustee for the benefit of Alexander, and the indebtedness to the estate of Blackwood on the ground of said judgments was satisfied by Alexander to the administrators.
The suit at law against Smith as surety to the guardian bond, in Fayette county, was commenced, as before stated, in March, 1849, less than twelve months after the institution of said suits against Alexander in North Carolina. And the object of the suit against Smith, on his bond, is admitted and proved to have been to secure indemnity, either to Alexander, in the event a recovery should be had against him, as guardian or as executor of the former guardian, in the suits pending in North Carolina; or, in case of failure to recover against him in either character, then to enable Blackwood to realize the amount due to him from Boyles.
It appears that Boyles, as well as the other two co-sureties of Smith, are insolvent, and have been for a long period.
The Chancellor, on the hearing, decreed for the complainant, and awarded a perpetual injunction, restraining the further prosecution of the suit at law. And the question is, did the Chancellor err in so decreeing?
*486 In the events that have happened since the institution of said suit at law, it may be conceded that it cannot, in its present form, be maintained. The death of Blackwood pending the suit, in view of our act of 1825, ch. 29, is a matter of no consequence. But the recovery in the Courts of North Carolina, during the pendency of the suit against Smith on his bond, against the subsequent guardians, for the same identical cause of action, and the satisfaction of the amount thus recovered actually made to the personal representatives of Blackwood since his death, operates in law to defeat the right of recovery against Smith; and if the action could be further maintained by the representative of Blackwood, it would at most be only for the recovery of costs and nominal damages, on the ground that the suit was properly commenced, upon a well-founded cause of action tlim existing.
But if the suit was brought with a view, likewise, to the indemnity of Alexander, and if it appears from the facts in the record that, in the existing state of the case, he is entitled to maintain an action on the bond to reimburse him the sum paid to Blackwood’s representatives, then it would be within the discretion of the Court of Law in which the action is still pending, under the act of 1851 — 2, to allow an amendment, substituting his name for Blackwood’s in the original process and declaration. And in this view, the question for our determination is, has Alexander, as the subsequent guardian, a right to recover from the former guardian or his surety the amount which he personally, or as executor of Orr, the former guardian, has been subjected to pay, on the ground of neglect to call the former guardian and his sureties to account for *487 the money of the ward received by him and appropriated to his own nse?
It seems clear that the mere negligence of Alexander to take steps promptly to coerce payment from Boyles and his sureties of the money which he failed to account for, did not discharge Boyles or his sureties from liability to pay the same. Certainly they still remained liable, upon their bond, to Blackwood; and if the latter, instead of proceeding against them, elected to hold Alexander liable, as he well might do, because of his neglect, the consequence would be, that Blackwood’s claim being thus satisfied, the debt from Boyles to Blackwood, and the right of action to recover the same from Boyles and his sureties, is by implication of law transferred to Alexander.
This conclusion may well be maintained, as we think, by analogy, upon the principle, solutio' pretii emptionis loco habetur — the payment of the price stands in the place of a sale. On this principle, on a recovery by law, in an action of trespass or trover, of the value of a specific chattel, of which the possession had been acquired by tort, the title of the goods is altered by the recovery, and is transferred, by operation of law, to the defendant: the damages recovered, if actually paid, are the price of the chattel, and it is considered as a sale and transfer of the property by operation of law.
There is some difference of opinion in the books upon the point whether the transfer of the title takes place by force of the judgment alone, without actual payment or satisfaction of the judgment. We hold that the change of rights depends upon the payment of the damages recovered, being the estimated value of the property. Until this shall have been done, the sale or transfer of the property, *488 implied by law, cannot be considered as complete. This is certainly the more just and reasonable doctrine. See 2 Kent’s Com., 388, and authorities cited.
The reason upon which this doctrine rests applies as much to a case like the present, and other cases similar in principle, as to the case of a recovery in an action of tort.
Take the case of a sheriff, or collecting agent, or attorney, intrusted with the collection of a debt, against whom — on the ground of negligence in the discharge of duty — a recovery and judgment with satisfaction have been obtained, equivalent in amount to the debt which he may have failed to collect in due time: what, in such case, becomes of the original debt ? Upon no principle of law or reason can it be regarded as extinguished as against the original debtor: he must be considered as still continuing liable to pay the debt to some one; and the question is, to whom is he so liable ? Certainly not to the original creditor, for his claim is, in fact and in law, fully satisfied and extinguished by the judgment with satisfaction against the third person, who has intervened between the original parties, and has been made liable, by judicial determination, to pay the debt. It must be held then, as an inevitable consequence, that the debt passes, by an implied transfer or assignment, to the third person, who, by law, has been subjected to its satisfaction. The negligence of the officer or agent, on the ground of which — as between him and the creditor — he has been charged with the satisfaction of the debt, cannot be set up by the original debtor as a reason for repelling his claim.
' The effect, in law, is simply this: The agent, by reason of his delay, is liable to pay the debt personally; and, *489 having been compelled to do so, the law transfers the debt to him, and substitutes him to the rights of the original creditor, and he may use the name of the original creditor, in any proper form of proceeding, to enforce his rights.
This doctrine is alike applicable to the case of a surety, or any one standing in a fiduciary relation who has been charged personally' with the payment of a debt due from another, either on the ground of his liability growing out of such relation, or on the ground of negligence in the discharge of duty.
The result is, that the decree must be reversed, and the bill be dismissed.